Adam E. Polk (State Bar No. 273000)
apolk@girardsharp.com
Jordan Elias (State Bar No. 228731)
jelias@girardsharp.com
Simon S. Grille (State Bar No. 294914)
sgrille@girardsharp.com
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

*Attorneys for Plaintiffs*

[Additional counsel on signature block]

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY TAPPANA, DARRYL ROBERTS, and DUSTIN FULCOMER, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>  vs.<br><br>AMERICAN HONDA MOTOR CO., INC.,<br><br>    Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT
CASE NO.

Plaintiffs Mary Tappana, Darryl Roberts, and Dustin Fulcomer, individually and behalf of all others similarly situated, bring this action against Defendant American Honda Motor Co., Inc. ("Defendant" or "Honda"), and allege as follows based upon personal knowledge as to themselves and their own acts and experiences; and, as to all other matters, upon information and belief based upon, among other things, investigations conducted by their attorneys.

## NATURE OF THE ACTION

1. Because of a manufacturing defect, the sunroofs and moonroofs in 2015-2020 Honda and Acura vehicles (the "Class Vehicles" or "Vehicles") are prone to suddenly explode, causing broken glass to shower onto the driver and passengers (the "Sunroof Defect" or "the Defect"). The Sunroof Defect creates serious danger for Vehicle occupants and others on the road. Drivers of Class Vehicles have reported sunroof explosions causing shards of glass to fly through their vehicles, sometimes while driving at high speeds. The loud explosion and flying glass distract drivers and create a hazard to the people in the Class Vehicles and those around them.

2. Honda has refused to remedy the Sunroof Defect and related damage when asked to do so by Vehicle owners and lessees. Honda's representatives often have suggested to consumers that their sunroofs were damaged by a flying object such as a rock or gravel. In fact, the Sunroof Defect manifests even when the glass is not exposed to an airborne object. The sunroofs explode as a result of the Defect present in the Honda and Acura vehicles at the point of sale.

3. Although Honda has known for many years of this Defect and the propensity of the sunroofs to explode, Honda failed to disclose the Defect to Plaintiffs and other consumers before they purchased or leased a Class Vehicle. Had Plaintiffs and other Class members known about the Sunroof Defect when they were deciding whether to purchase or lease a Class Vehicle, they would not have completed the transaction or would have paid substantially less than they did. Through this action, Plaintiffs seek

CLASS ACTION COMPLAINT
CASE NO.

relief against Honda on behalf of the Class of similarly situated Vehicle purchasers and lessees under established principles of warranty and consumer protection law.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5.      Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because Honda is headquartered and regularly transacts business in this district, is subject to general personal jurisdiction in this district, and therefore is deemed to be a citizen of this district. Additionally, Honda has advertised in this district and has received substantial revenue and profits from its sales and/or leasing of Class Vehicles in this district. As such, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

6.      This Court has personal jurisdiction over Honda because it is headquartered in this judicial district, has conducted substantial business in this judicial district, and intentionally and purposefully placed Class Vehicles into the stream of commerce within California, and throughout the United States.

## THE PARTIES

### Plaintiff Mary Tappana

7.      Plaintiff Mary Tappana is a citizen of the State of Missouri and resides in Webb City, Missouri.

8.      In or around January 2021, Ms. Tappana purchased a new 2021 Honda Pilot Touring with a sunroof from Roper Honda, an authorized Honda dealer located in Joplin, Missouri.

2

CLASS ACTION COMPLAINT
CASE NO.

9.   Ms. Tappana researched the vehicle, reviewed Honda marketing and promotional materials available at the dealership, and spoke with Honda sales representatives before she purchased her Class Vehicle. Ms. Tappana also reviewed the vehicle's Monroney sticker prior to purchase.[1]

10.   Ms. Tappana purchased (and still owns) this vehicle, which she uses for personal, family and/or household uses.

11.   On or about October 16, 2021, with approximately 14,600 miles on the odometer, Ms. Tappana was traveling in the vehicle with her daughter. Suddenly, and without warning, she heard a loud booming sound and quickly realized that the sunroof on her vehicle had spontaneously exploded. The explosion caused Ms. Tappana to become distracted and put her and others on the road at risk of a collision. She was unable to immediately pull over, as she was driving on a busy highway. She drove two miles to the nearest exit before she was able to stop and assess the damage.

12.   When the incident occurred, Ms. Tappana's vehicle was still covered by Honda's three-year or 36,000-mile limited warranty. Despite the vehicle being in warranty, however, when Ms. Tappana presented it to Roper Honda, Honda refused to cover the replacement of her sunroof under its warranty. Ms. Tappana consequently paid $579.05 to Roper Honda to replace her shattered sunroof.

13.   Before purchasing the Class Vehicle, Plaintiff Tappana did not know that the Class Vehicles suffered from the Defect. Had Honda disclosed the defective nature of the Class Vehicle prior to her purchase, on the vehicle's Monroney sticker, in promotional and marketing materials, in the accompanying print materials, or through some other means, Ms. Tappana would not have bought a Class Vehicle or would not have bought a Class Vehicle at the price she did. As a result of Honda's conduct described herein, she has been injured.

---

[1] A Monroney sticker is the label placed on automobiles that displays the manufacturer's suggested retail price and other consumer information. 49 C.F.R. § 575.401(c)(4).

CLASS ACTION COMPLAINT
CASE NO.

**Plaintiff Darryl Roberts**

14.     Plaintiff Darryl Roberts is a citizen of the State of Washington and resides in Tacoma, Washington.

15.     In or around April 2017, Mr. Roberts purchased a new 2017 Honda Accord Coupe with a sunroof from Honda of Fife, an authorized Honda dealer located in Fife, Washington.

16.     Mr. Roberts researched the vehicle and reviewed Honda marketing and promotional materials available at the dealership before he purchased his Class Vehicle. Mr. Roberts also reviewed the vehicle's Monroney sticker prior to purchase.

17.     Mr. Roberts purchased (and still owns) this vehicle, which is used for personal, family and/or household uses.

18.     On or about October 27, 2021, with approximately 69,000 miles on the odometer, Mr. Roberts was traveling in the vehicle. Suddenly, and without warning, he heard a loud exploding sound and quickly realized that the sunroof on his vehicle had exploded. The explosion distracted Mr. Roberts while he was driving and exposed him to the risk of a collision. He immediately pulled over and was in shock. He got out of his vehicle on the side of the road to inspect his sunroof.

19.     Mr. Roberts presented his vehicle to Honda for a replacement sunroof. Honda refused to cover his replacement. Mr. Roberts consequently paid approximately $579 for a replacement sunroof.

20.     Before purchasing the Class Vehicle, Plaintiff Roberts did not know that the Class Vehicles suffered from the Defect. Had Honda disclosed the defective nature of the Class Vehicle prior to his purchase, on the vehicle's Monroney sticker, in promotional and marketing materials, in the accompanying print materials, or through some other means, Mr. Roberts would not have bought a Class Vehicle or would not have bought a Class Vehicle at the price he did. As a result of Honda's conduct described herein, he has been injured.

CLASS ACTION COMPLAINT
CASE NO.

**Plaintiff Dustin Fulcomer**

21.     Plaintiff Dustin Fulcomer is a citizen of the State of Florida and resides in Riverview, Florida.

22.     In or around October 2020, Mr. Fulcomer purchased a new 2019 Acura TLX with a sunroof from Maus Acura of North Tampa ("Maus Acura"), an authorized Acura dealer located in Tampa, Florida.

23.     Mr. Fulcomer researched the vehicle and reviewed Acura marketing and promotional materials available at the dealership before he purchased his Class Vehicle. Mr. Fulcomer also reviewed the vehicle's Monroney sticker prior to purchase.

24.     Mr. Fulcomer purchased (and still owns) this vehicle, which is used for personal, family and/or household uses.

25.     On or about December 10, 2020, with approximately 300 miles on the odometer, Mr. Fulcomer was traveling in the vehicle when suddenly, and without warning, he heard an exploding sound. The sunroof on his vehicle had exploded. The explosion distracted Mr. Fulcomer while he was driving and exposed him to the risk of a collision. He immediately pulled over and was in shock. He got out of his vehicle on the side of the road to inspect his sunroof. Mr. Fulcomer observed nothing near him that could have caused the glass to shatter.

26.     Mr. Fulcomer brought his Class Vehicle to Maus Acura, and requested warranty coverage. When the incident occurred, Mr. Fulcomer's vehicle was still covered by Honda's three-year or 36,000-mile limited warranty. Despite the vehicle being in warranty, however, when Mr. Fulcomer presented it to Maus Honda, the dealership declined coverage and instead offered Mr. Fulcomer a $30 coupon that could be applied to the $1,300 estimate to fix his Class Vehicle.

27.     Mr. Fulcomer paid approximately $1,600 at Maus Acura to replace the sunroof.

28.     Before purchasing the Class Vehicle, Plaintiff Fulcomer did not know that the Class Vehicles suffered from the Defect. Had Honda disclosed the defective nature of

CLASS ACTION COMPLAINT
CASE NO.

the Class Vehicle prior to his purchase, on the vehicle's Monroney sticker, in promotional and marketing materials, in the accompanying print materials, or through some other means, Mr. Fulcomer would not have bought a Class Vehicle or would not have bought a Class Vehicle at the price he did. As a result of Honda's conduct described herein, he has been injured.

*     *     *

29.     Plaintiffs purchased their Class Vehicles because they preferred the representations, features and aesthetics of the Class Vehicles to other automobiles. Honda continues to advertise the Class Vehicles as high quality and reliable. Because of their experience with the Class Vehicles, Plaintiffs no longer trust Honda's representations about the Class Vehicles. As a result, although Plaintiffs would like to buy another Class Vehicle in the future, they will not do so unless Honda takes sufficient steps to cure the Defect and ensure full and accurate disclosures regarding the Class Vehicles

<strong><u>Defendant</u></strong>

30.     Defendant American Honda Motor Co., Inc. ("Honda") is headquartered in Torrance, California. Honda distributes, markets, services, repairs, and sells Honda and Acura vehicles, including the Class Vehicles.

31.     Honda develops or controls the content of the owner's manuals, warranty booklets and information included with the Class Vehicles. Honda also develops or controls the content of advertising and promotional materials for the Class Vehicles.

32.     Honda engages in continuous and substantial business in California.

<strong><u>FACTUAL ALLEGATIONS</u></strong>

**A.      <u>The Sunroof Defect Within the Class Vehicles</u>**

33.     A sunroof or moonroof is a piece of glass embedded in the roof of a motor vehicle. For purposes of this Complaint, sunroofs and moonroofs are collectively referred to as "sunroofs."

34.     The Class Vehicles include sunroofs manufactured with tempered glass, which is manufactured using heat or chemicals.

6

35.     Tempered glass is generally made by shaping and cutting a piece of annealed glass that is then heated and rapidly cooled. This tempering process creates an outer layer of compression that is shrink-wrapped around the middle of the glass, which is constantly pressing outwards. If the outer layer is compromised then the entire piece of glass explosively shatters.

36.     When tempered glass fails, it can explode suddenly, causing thousands of pieces of glass to rain down at once onto the driver and occupants of the vehicle, as well as those nearby.

37.     Alternatively, some automakers use laminated glass to manufacture sunroofs to prevent sunroof explosions. In contrast to tempered glass, laminated glass is intended to hold its form even when shattered, and can reduce the risk of sudden explosions. Laminated glass is made of two or more panes of annealed glass joined together by a layer of plastic, or polyvinyl butyral (PVB). One of the biggest benefits of laminated glass is that if it breaks, the broken glass will stick to the plastic instead of instantly dropping.

38.     The below graphic illustrates the difference between laminated and tempered glass.[2]

---

[2] https://www.consumerreports.org/car-safety/laminated-glass-reduce-risk-exploding-sunroofs/ (last visited Oct. 31, 2021).

CLASS ACTION COMPLAINT
CASE NO.

**One Way to Make Sunroofs Safer: Stronger Glass**

Using laminated glass—two panes fused by a sheet of plastic—instead of tempered glass could make sunroofs safer, in part because they are more likely to stay in one piece and hold their form when broken.

39.     Tempered glass is created by rapidly cooling the hot glass, which results in the surface temperature falling much quicker than the core of the glass. This process creates permanent compression stress in the glass.

40.     Binding the glass into a frame causes additional stress, particularly as the glass expands and contracts due to temperature changes. The stress can cause so much force that it triggers an explosion when the glass releases its stored energy.

41.     Honda's use of thin, tempered glass to manufacture Sunroofs is substandard, dangerous, and inadequate because of the heightened risk of explosion from this material. Contaminants, such as nickel sulphide, within tempered glass render it vulnerable to shattering. Nickel sulphide crystals can change shape or size over time due to factors like changes in temperature. The unstable nickel sulphide deposit embedded within the glass stresses the panel and can eventually cause an explosion.

42.     Several other manufacturing flaws are common with tempered glass, such as inadequate cooling times, uneven distribution of air over the hot glass surface, poor

8

installation with the glass bonded or installed incorrectly, ill-fitting glass forced into apertures, and points of mechanical contact creating stress on the glass panel.

43. Automobile manufacturers are under a mandate and increasing public pressure to improve fuel efficiency, and they have done so in part through lightening the weight of their vehicles by thinning the glass used in sunroofs. Honda has remained competitive with other manufacturers when it comes to thinning the glass used in its sunroofs. Thinner glass, however, is difficult to temper properly. And because the compressive layers are thinner, there is a much higher likelihood of the panel being compromised.

44. Growing demand by American consumers for sunroofs has fit in with Honda's goal of improving emissions targets. A glass sunroof surface creates less friction than a painted metal roof. As a result, Honda has replaced the metal structural component (roof) of the vehicle with a thin glass sunroof which, once affixed, also becomes a structural component of the vehicle. The sunroofs within the Class Vehicles, however, are not able to withstand typical and foreseeable structural forces and therefore shatter.

45. Honda knows that it must construct its vehicles and sunroofs to withstand foreseeable structural forces on the sunroofs within the Class Vehicles. Honda's failure to do so with respect to the Class Vehicles is a direct cause of the Sunroof failures.

46. The tempered glass generally shatters into very small pieces, and this debris creates significant risks for passengers. Some families who experienced a sunroof explosion while driving, for example, reported their infants being covered in glass. The instinctive shock and fright from having glass shatter and rain down on you when driving makes such an incident inherently dangerous.

**B. Honda's Knowledge of the Sunroof Defect**

47. Honda has long known that the sunroofs in Honda and Acura vehicles are prone to spontaneous, hazardous shattering.

48. Between 1995 and 2017, 859 complaints of exploding sunroofs were made

to the National Highway Traffic Safety Administration.[3] Furthermore, "consumer complaints in NHTSA's database are only a fraction of the actual sunroof explosions occurring in the U.S."[4] All vehicle manufacturers, including Honda, are legally obligated to routinely monitor and analyze NHTSA complaints in order to determine whether vehicles or automotive components should be recalled due to safety concerns, and Honda thus has knowledge of NHTSA complaints. Honda also regularly monitors consumer complaints made to NHTSA.

49.     On or about April 14, 2016, NHTSA issued a General Order Directed to Motor Vehicle Manufacturers, including Honda, which required the recipients to file certain reports related to shattered sunroofs.[5]

50.     Purchasers of Class Vehicles also complained directly to Honda when they brought their vehicles in to authorized dealerships for repairs and warranty assistance after their sunroofs shattered.

51.     Consumers have previously sued Honda when their sunroofs exploded for no reason, including in 2017.

52.     Also in 2017, Consumer Reports released findings from an investigation into exploding sunroofs. Consumer Reports concluded that "the issue is well known to the auto industry and government safety regulators." It also found that "incidents [of exploding sunroofs] have happened in every month of the year in every part of the country, in vehicles from all over the world; they have occurred on interstates, on country roads, and even while parked in driveways."[6]

53.     The Consumer Reports investigation sparked a U.S. Senate probe. Senators

---

[3] https://www.consumerreports.org/car-safety/exploding-sunroofs-danger-overhead/ (last visited Oct. 31, 2021).

[4] *Id.*

[5] https://static.nhtsa.gov/odi/inv/2014/INLM-EA14002-63477.pdf (last visited Nov. 9, 2021).

[6] https://www.consumerreports.org/car-safety/exploding-sunroofs-danger-overhead/ (last visited Oct. 31, 2021).

CLASS ACTION COMPLAINT
CASE NO.

Richard Blumenthal and Edward Markey sent letters to 17 major automakers, including Honda,[7] asking what they were doing about the problem, including whether they used tempered or laminated glass.[8]

54.     After the Sunroof Defect manifests, the Class Vehicles require costly and time-consuming repairs, and the Defect puts drivers and occupants at great risk of bodily harm. The sudden shower of glass is accompanied by booming sounds that further startle and distract the driver, presenting an immediate risk to vehicle occupants.

55.     Sunroofs are meant to function for periods (and mileages) substantially in excess of those specified in Honda's warranties. Consumers legitimately expect to enjoy the use of an automobile without the sunroof failing for significantly longer than the time periods and mileages stated in Honda's warranties.

56.     Honda markets its vehicles as particularly reliable when compared to the competition.[9]

57.     Honda is experienced in the manufacture of consumer vehicles. Honda conducts tests, including pre-sale durability testing, on incoming components, including Vehicle sunroofs, to verify that the parts are free from defects and align with Honda's specifications.

58.     Honda's presale durability testing includes five metrics that purportedly "ensure high quality" by conducting "comprehensive quality assurance activities from the

---

[7] Honda responded that its choice of glass varies by model. It noted that its 2017 Pilot SUV used laminated glass. Nevertheless, newer models of the Pilot SUV—including Plaintiff Tappana's model—no longer use laminated glass.

[8] https://www.consumerreports.org/car-safety/laminated-glass-reduce-risk-exploding-sunroofs/ (last visited Oct. 31, 2021).

[9] https://www.forbes.com/sites/dalebuss/2021/10/18/honda-put-brand-first-in-bellwether-campaign-for-era-of-scarce-supply/?sh=4730a9cb454f (last visited Oct. 31, 2021).

11

CLASS ACTION COMPLAINT
CASE NO.

dual perspectives of design and manufacturing."[10] Honda stated that its "production departments implement manufacturing controls to keep variability within applicable standards based on drawings and develop production processes so that all workers can continue to achieve a consistent level of quality." Thus, in addition to being on notice of the sunroof explosions from consumer complaints, internal presale testing, NHTSA contacts, media reports and Congressional investigation, Honda implements comprehensive quality assurance activities and manufacturing controls to identify problems like the Sunroof Defect prior to releasing the relevant product.

59.     First, Honda's "engineers utilize a database of measures and techniques previously used to prevent market quality issues and other information as they communicate closely with manufacturing departments during the initial development stage. Product function, performance and quality assurance initiatives are committed to writing and are shared to ensure efforts are coordinated with production departments' process assurance activities and to coordinate quality assurance initiatives."[11]

60.     Second, "Honda's production departments establish manufacturing control items and criteria for each part, process, and operation to prevent product quality issues." These controls are explicitly put in place to "prevent product quality issues" whereby Honda's engineers "use these manufacturing control items and criteria to verify manufacturing variability as they work to prevent quality issues."[12]

61.     Third, for outsourced parts, Honda visits its suppliers' manufacturing facilities to conduct quality audits based on the "'Three Reality Principle,' which emphasizes 'going to the actual place,' 'knowing the actual situation' and 'being realistic.'" Honda uses "[e]xperts in the development and production of individual parts

---

[10]https://web.archive.org/web/20170719214241/http://world.honda.com/sustainability/quality/initiative/design-development-production/ (site indexed by web.archive.org on July 19, 2017) (last visited Nov. 9, 2021).

[11] *Id.*

[12] *Id.*

CLASS ACTION COMPLAINT
CASE NO.

visit manufacturing facilities and conduct audits of suppliers' quality systems and their implementation."[13]

62.   Fourth, and most importantly, Honda assures the long-term reliability of its parts and vehicles through "meticulous durability testing." Honda states the following about this metric (emphasis added):

> Honda subjects new and redesigned models to a rigorous regimen of long-distance durability testing before beginning mass production to verify that there are no quality issues.
>
> *We also disassemble vehicles used in the test drives into every single part and verify that there are no quality issues through a process consisting of several thousand checks.* By accumulating data on the issues discovered through these test drives and detailed inspections as well as associated countermeasures, we are able to ensure a high level of quality and reliability.[14]

63.   Fifth, Honda developed and implemented the "Line End Tester," an inspection and diagnostic system, which means "inspections that have traditionally depended on the human senses of smell, sight and hearing can now be performed quantitatively through communications with electronic control components, dramatically increasing the precision and efficiency with which inspections can be conducted."[15]

64.   Through these quality-control metrics, Honda knew or should have known that the sunroofs in the Class Vehicles are defective and prone to shattering.

65.   Lastly, as explained in Honda's Sustainability Report:

---

[13] *Id.*

[14] *Id.*

[15] *Id.*

CLASS ACTION COMPLAINT
CASE NO.

When Honda determines that an issue occurs with a product that requires market action, it quickly reports the issue to government authorities in accordance with countries' regulations and contacts owners by means of direct mail from dealers or by telephone to provide information about how they can receive free repairs. Associated information is also provided on Honda's website and through the news media as necessary.[16]

66.     Despite such assurances and procedures, Honda has not contacted Class members by mail or telephone to inform them how they can receive free repairs related to the Sunroof Defect within the United States. Honda also has not provided information associated with the Sunroof Defect on its website or through the news media.

67.     Honda expressly warranted the Class Vehicles to be free from defects for a period of three years or 36,000 miles under the New Vehicle Limited Warranty.[17] The warranty is applicable to the Sunroof Defect, but Honda has failed to remedy the problem.

68.     Honda—through (1) its own records of customers' complaints, (2) dealership repair records, (3) records from the NHTSA, (4) warranty and post-warranty claims, (5) internal presale durability testing, and (5) other public sources, such as complaints, governmental investigations, news reports, and litigation involving similar sunroof failures—knew of the Sunroof Defect before each Plaintiff bought their Class Vehicle. Despite this knowledge, Honda has failed to notify actual or prospective customers of the nature and extent of the problems with Class Vehicle sunroofs or to provide an adequate remedy.

69.     Buyers, lessees, and other owners of the Class Vehicles were without access

---

[16]https://global.honda/content/dam/site/global/about/cq_img/sustainability/report/pdf/2020/Honda-SR-2020-en-all.pdf (last visited Nov. 10, 2021).

[17]http://owners.honda.com/Documentum/Warranty/Handbooks/2018_Honda_Warranty_Basebook_AWL05251_FINAL.pdf (last visited Nov. 9, 2021).

14

to the information concealed by Honda as described herein, and therefore reasonably relied on Honda's representations and warranties regarding the quality, durability, and other material characteristics of the Vehicles. Had these buyers and lessees known of the Defect and its associated danger, they would not have purchased the Vehicles or would have paid less for the Vehicles.

70.    Despite the known risk from the Defect, Honda has not informed purchasers and lessees of its vehicles of the Sunroof Defect; nor has Honda recalled its vehicles made with defective sunroofs.

C.    **Dangers and Costs to Owners, Lessees and Occupants of Class Vehicles**

71.    As NHTSA and various manufacturers have acknowledged, the sudden and spontaneous shattering of a sunroof endangers drivers, passengers, and others on the road. Sunroofs, which are intended to last for the life of the vehicle, are also a premium upgrade for most vehicles. The repair of a shattered sunroof typically costs hundreds or thousands of dollars and can be an elaborate procedure, often requiring that drivers give up their vehicles for a week or more. A reasonable person considering whether to purchase or lease a Class Vehicle who learned of the sunroof's propensity to shatter would find these expenditures material, and would opt against paying the thousands of dollars for such an upgrade or simply forgo purchasing the vehicle in favor of a competitor's vehicle.

72.    When sunroofs in the Class Vehicles shatter, they make a sudden and extremely loud noise, which, in addition to distracting drivers travelling at high speeds, rains glass down onto the driver and passengers. There are reports of falling shards of glass having cut drivers and passengers and ripped the fabric in the vehicle's interior. Drivers face an elevated hazard of collision from being startled and distracted by the sudden noise.

73.    After a sunroof shatters, the occupants and interior of the vehicle are also exposed to the elements—whether low or high temperatures, rain, sleet, snow, hail, or other debris. Moreover, the vehicles are no longer secure, because the interior can be

accessed through the shattered sunroof.

74.     Additionally, the explosion of shattered glass can cause damage to the body of the vehicle, such as scratching the paint, and the repairs for such damage can be costly.

75.     Despite Honda's knowledge of the Sunroof Defect, it refuses to cover repairs under its warranty.

76.     Many consumers have incurred and will continue to incur substantial expenses for repair or replacement of shattered sunroofs despite Honda's knowledge of the defect.

### D.   **Complaints by Other Class Members.**

77.     Plaintiffs' experiences are not unique. The internet is replete with examples of blogs and other websites where consumers describe the Sunroof Defect within the Class Vehicles and predecessor models.

78.     The following is a small sampling of the many complaints made by Honda and Acura owners. These complaints evidence Honda's longstanding knowledge of the Sunroof Defect, the negative experiences of Class members, and the financial burden associated with addressing the Defect:

**Consumer No. 1:**

We bought a new 2010 Honda Accord in Nov. 2009. Fully loaded V 6 with Sun Roof. Car has only 13,300 miles. Like brand new. We, my wife and I, were driving to Costco in Antioch, CA on June 26th, Thur. on Hwy 4 when we heard this terrible explosion on the roof of our car. We have only used our sun roof three or four times since we bought the car. We are 70 years old and really don't like the sun coming into the top of car. We pulled over off the freeway, got out and saw the whole sun roof was gone and all this glass was everywhere. . . . Our Honda dealership was a mile and a half from us so we went there. They told us they had heard of this happening before. We were just in shock. If we had our inside roof panel pulled back, glass would have come inside raining down on us and there could have been a terrible accident. . . .

This is a real problem . . . . called "Honda Customer Care Service" and they said

this was not covered.[18]



**Consumer No. 2:**

Hello everyone,

I was driving about 70mph and had my sunroof opened.... i repeat opened. Then all of a sudden I hear this gunshot sound and glass just starts raining inside my car. I look up and the sunroof just shattered while it was retracted back inside the top.

I pullover to see what in the world happened thinking that some rock fell on top of the car itself and somehow shattering the sunroof underneath because I had it opened the whole time... NOPE. . . .

Nothing hit the sunroof nor did I hit any bump on the road. Just a smooth ride

---

[18] Posted at https://www.carcomplaints.com/Honda/Accord/2010/windows_windshield/shattered-exploded_sunroof.shtml by kwheat on June 26, 2014 (last visited Nov. 12, 2021).

CLASS ACTION COMPLAINT
CASE NO.

down the highway before it literally exploded and shattered to pieces.[19]

**Consumer No. 3:**

my sunroof was closed. I heard a loud sound and thought it was my large rear window but then I saw glass literally flying from the top in my rearview mirror. Luckily there were no cars behind me as I was driving 65 mph . . . . At first I thought a meteor rock hit my sunroof as there is no accounting for this to happen whatsoever! I pulled over and could not believe all the damage. Unfortunately, it was a danger too as glass continued to fly out from it and I was afraid at that point.[20]

**Consumer No. 4:**

**Accord sunroof exploded**

My 2012 accord's sunroof also exploded in March 2016. I was not driving it, my wife did.
The roof just exploded when she was driving on the highway.
We called Honda and they take not responsibility of it and there is a high deductible from our auto insurance.
So we just pay out of pocket $650 to repair it.[21]

**Consumer No. 5:**

**2015 Honda Accord Sunroof exploded**

my sunroof exploded. Very scary, thought it was a gunshot! I can't believe this happened. Horrible feeling!!! Barely have 12k miles on my car. Already filed a

---

[19] Posted at https://www.driveaccord.net/threads/sunroof-mysteriously-shatters.310778/ by MN_Accord09 on May 3, 2015 (last visited Nov. 11, 2021); author indicates he drives 2009 Honda Accord Sedan Ex-L V6.

[20] Posted at https://www.driveaccord.net/threads/sunroof-mysteriously-shatters.310778/ by brokesunroof on February 5, 2016 (last visited Nov. 11, 2021).

[21] Posted at https://www.driveaccord.net/threads/sunroof-mysteriously-shatters.310778/ by IIIchun on March 15, 2016 (last visited Nov. 11, 2021).

CLASS ACTION COMPLAINT
CASE NO.

claim with my insurance but now I'm thinking Honda should pay.[22]

**Consumer No. 6:**

**2017 Honda CR-V EX Sunroof Explodes**

suddenly we heard a very large explosion. It scared us to death! Once we recovered we heard a large whoshing [sp] sound above us and figured out that the sunroof had exploded. When we pulled over to check it out about 70% of the glass was gone. There were no cars near us when it happened. . . We immediately went to our local Honda dealership after it happened and they said it was highly unlikely to be covered.[23]

**Consumer No. 7:**

**Shattered Sunroof**

. . . about 1.5 hrs out of Houston we hear a loud exploding noise on the roof. I slid back the sunroof cover to see that my sunroof glass has just exploded. We weren't driving close to anyone and it wasn't a construction zone. We didn't hear a rock and it seems like a long shot for a rock to do this amount of damage. . . . the dealership just sent us away and wouldn't do anything. It seems clear to us that there was some kind of defect that just caused the sunroof to explode like that.[24]

---

[22] Posted at https://www.driveaccord.net/threads/sunroof-mysteriously-shatters.310778/ by Nurse Dee on May 22, 2016 (last visited Nov. 11, 2021).

[23] Posted at https://www.crvownersclub.com/forums/13-dear-honda-feedback-forum/188355-2017-honda-cr-v-ex-sunroof-explodes.html by zeeman on July 10, 2018 (last visited Nov. 9, 2021).

[24] Posted at https://www.odyclub.com/forums/81-2018-odyssey/341186-shattered-sunroof.html by boricusatock on May 1, 2018 (last visited Nov. 9, 2021).

19

CLASS ACTION COMPLAINT
CASE NO.



**Consumer No. 8:**

I was driving 65mph on the highway and a *loud* boom occurred. Staying calm and seeing glass shards fly back in my rearview mirror, I put on my hazard lights, exited off the freeway . . . Luckily I didn't have my sunroof visor open otherwise the glass would've fallen on me at highway speeds. . . .

Then I searched on Google and found out that the NHTSA has an ongoing investigation with randomly exploding sunroofs on the highway and it's an ongoing problem. It's covered on the news too.[25]

**Consumer No. 9:**

While driving at highway speed, the sunroof exploded . . . . My real concern is the safety issue. If the sun shield was open the tempered glass that shattered into thousands of small pieces could fall onto the driver and into his eyes. . . . . What will it take to make changes, a car lose control and hit a school bus? and last,

---

[25] Posted at https://www.civicx.com/threads/exploding-shattered-sunroof.10490/ by DrTurtlz on Feb. 21, 2017 (last visited Nov. 11, 2021); author indicates he owned a 2016 Honda Civic EX-L in Modern Steel.

[25] Posted at https://www.civicx.com/threads/exploding-shattered-sunroof.10490/ by DrTurtlz on Feb. 21, 2017 (last visited Nov. 11, 2021); author indicates he owned a 2016 Honda Civic EX-L in Modern Steel.

CLASS ACTION COMPLAINT
CASE NO.

Acura stated the exploding glass is an insurance issue. I disagree, how many insurance claims are due to defective tempered glass that have a defect when made that the auto company should cover under warranty.[26]

**Consumer No. 10:**

We heard a sound like something hit the roof. I was in the passenger seat . . . the glass was completely shattered. . . . We never saw anything else hit the car.[27]

**Consumer No. 11:**

My husband was driving his 2015 Acura TLX earlier this week when the sunroof exploded while he was driving on the highway. It was sunny and 60 degrees outside.
He was on an open stretch of road and not under any overpasses. There were no other vehicles near him that could have caused a projectile to his sunroof.

. . . a quick Google search reveals this is an ongoing issue. I'm convinced it's a manufacturing error and it's certainly a safety issue. . . .

My question is: what other recourse do we have and has anyone experienced something similar?[28]

79.    A news account in 2017, entitled "Exploding Sunroofs – Fact or Fiction," reported that the shattering glass problem is "real" and "on the increase." The same account discussed a 2006 Honda Accord with an exploded sunroof and contained the below photograph. Honda did not replace this sunroof, even though the vehicle was still

---

[26] Posted at https://www.carcomplaints.com/Acura/TLX/2015/windows_windshield/visibility-sun_moon_roof_assembly.shtml on January 15, 2017 (last visited Nov. 12, 2021); post indicates complainant owned 2015 Acura TLX.

[27] Posted at https://www.tlxforums.com/threads/exploding-sunroof.43732/ by Liz C on April 22, 2019 (last visited Nov. 11, 2021).

[28] Posted at https://www.tlxforums.com/threads/exploding-sunroof.44174/ by JoAcura on January 30, 2020 (last visited Nov. 11, 2021).

CLASS ACTION COMPLAINT
CASE NO.

under its comprehensive warranty.[29]



## CLASS ACTION ALLEGATIONS

80.     Plaintiffs bring this action on their own behalf and on behalf of the following Class and Subclasses pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), (b)(3), and/or (c)(4):

**Class**

All persons or entities in United States who purchased or leased a Class Vehicle (the "Nationwide Class").

---

[29] http://bestride.com/news/safety-and-recalls/exploding-sunroofs-fact-or-fiction (last visited May 12, 2019).

CLASS ACTION COMPLAINT
CASE NO.

The Class Vehicles are all model year 2015-2021 Honda and Acura vehicles equipped with a sunroof or moonroof manufactured with tempered glass.

**Missouri Subclass**

All persons who purchased or leased a Class Vehicle in Missouri (the "Missouri Subclass").

**Washington Subclass**

All persons who purchased or leased a Class Vehicle in Washington State (the "Washington Subclass").

**Florida Subclass**

All persons who purchased or leased a Class Vehicle in Florida (the "Florida Subclass").

81.     The Class and these wholly incorporated state Subclasses are referred to collectively herein as the "Class." Excluded from the Class are Defendant, its affiliates, employees, officers and directors, persons or entities that purchased the Class Vehicles for resale, and the Judge(s) assigned to this case. Plaintiffs reserve the right to modify, change or expand the Class and Subclass definitions based on discovery and further investigation.

82.     <u>Numerosity</u>: The Class is so numerous that joinder of all members is impracticable. While the exact number of individual Class members is unknown at this time, such information being in the possession of Honda, Plaintiffs believe the Class and Subclasses each contain at least tens of thousands of Class members. These members can be readily identified and notified based on information in Honda's possession, including Honda's vehicle identification numbers (VINs), warranty claims, registration records, and the database of complaints.

83.     <u>Existence and predominance of common questions of fact and law</u>: Common questions of law and fact exist as to all members of the Class and predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

CLASS ACTION COMPLAINT
CASE NO.

a.   whether the sunroofs in the Class Vehicles are predisposed to shattering;

b.   whether the sunroofs in the Class Vehicles contain a manufacturing defect;

c.   whether the Sunroof Defect causes sunroofs to spontaneously explode in the Class Vehicles;

d.   whether Defendant knowingly failed to disclose the Sunroof Defect in the Class Vehicles;

e.   whether Defendant's conduct violates the Missouri Merchandising Practices Act, the Washington Consumer Protection Act, and/or the Florida Deceptive and Unfair Trade Practices Act;

f.   whether, as a result of Defendant's misleading partial representations and omissions related to the Sunroof Defect, Plaintiffs and members of the Class have suffered ascertainable loss;

g.   whether, as a result of Defendant's misleading partial representations and omissions related to the Sunroof Defect, Plaintiffs and members of the Class have suffered an increased cost of maintenance or diminution in value in connection with the Class Vehicles; and

h.   whether Plaintiffs and Class members are entitled to monetary damages and/or other remedies and, if so, the nature of any such relief.

84.   <u>Typicality</u>: All of the Plaintiffs' claims are typical of the claims of the Class since Plaintiffs, like all Class members, purchased or leased Class Vehicles with the Sunroof Defect. Further, Plaintiffs and all Class members sustained economic injuries arising out of Honda's uniform course of conduct alleged herein. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and the Class.

85.   <u>Adequacy of representation</u>: The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel. Plaintiffs are adequate class

CLASS ACTION COMPLAINT
CASE NO.

representatives because their interests do not conflict with the interests of the Class they seek to represent, and Plaintiffs have retained counsel competent and highly experienced in complex class action litigation who intend to prosecute this action vigorously.

86.     <u>Superiority</u>: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of prosecuting these claims individually. Individualized litigation also would risk inconsistent or contradictory judgments and increase the delay and expense to all parties and the courts. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

87.     <u>Injunctive relief</u>: Honda has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the class as a whole.

## **TOLLING OF THE STATUTES OF LIMITATIONS**

88.     All applicable statute(s) of limitations have been tolled by Honda's knowing and active concealment and denial of the facts alleged herein. Plaintiffs and members of the Class could not have reasonably discovered the true, latent defective nature of the Class Vehicles until shortly before this class action litigation commenced.

89.     Honda was and remains under a continuing duty to disclose to Plaintiffs and members of the Class the true character, quality and nature of the Class Vehicles and that the Sunroof Defect will require costly repairs and diminishes the resale value of the Class Vehicles. As a result of the active concealment by Honda, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

CLASS ACTION COMPLAINT
CASE NO.

**FIRST CAUSE OF ACTION**
**Violation of the Missouri Merchandising Practices Act**
**Mo. Rev. Stat. § 407.010 *et seq.***
**(By Plaintiff Tappana on behalf of the Missouri Subclass)**

90.     Plaintiffs incorporate and reallege the foregoing allegations of fact.

91.     Plaintiff Tappana, Missouri Subclass members, and Honda are "persons" under the MMPA and Class Vehicles are "Merchandise" under the MMPA. Mo. Rev. Stat. § 407.010.

92.     The MMPA prohibits the act, use or employment of "deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce[.]" Mo. Rev. Stat. § 407.020. Honda's conduct described herein was deceptive, fraudulent, and unfair in violation of the MMPA. Honda failed to disclose material facts to Plaintiffs and Missouri Subclass members concerning the Sunroof Defect, made misleading partial representations regarding the quality of Class Vehicles without disclosing the entire truth, furnished replacement parts that it knew would not adequately remedy the Sunroof Defect, failed to exercise adequate quality control and due diligence over the Class Vehicles before placing them on the market, and refused to acknowledge the scope and severity of the Defect, which poses safety concerns.

93.     Plaintiff Tappana and Missouri Subclass members purchased their Class Vehicles for personal purposes and suffered ascertainable losses of money or property as the result of the use or employment of a method, act or practice declared unlawful by Mo. Rev. Stat. § 407.020. Plaintiff Tappana and Missouri Subclass members acted as reasonable consumers would have acted under the circumstances. Honda's deceptive, fraudulent, and unfair conduct would cause a reasonable person to purchase or lease Vehicles resulting in damages.

94.     Accordingly, pursuant to Mo. Rev. Stat. § 407.025, Plaintiff Tappana and Missouri Subclass members are entitled to recover their actual damages, which can be

26

calculated with a reasonable degree of certainty using sufficiently definitive and objective evidence. Those damages are: (a) the difference between the values of the Class Vehicles as represented in the prices Plaintiffs and Missouri Subclass members paid and their actual values at the time of purchase, or (b) the cost to repair and/or replace the defective Sunroofs, as well as (c) other miscellaneous incidental and consequential damages.

95.    Pursuant to Mo. Rev. Stat. § 407.025, Plaintiff Tappana and Missouri Subclass members also seek punitive damages and recovery of attorneys' fees and costs, as well as other equitable relief, such as a buyback of the Class Vehicles.

96.    In accordance with Mo. Rev. Stat. § 407.025, a copy of this Complaint has been served on the Attorney General of Missouri.

### SECOND CAUSE OF ACTION
**Violation of the Washington Consumer Protection Act ("WCPA")**
**Wash. Rev. Code § 19.86.010 *et seq.***
**(By Plaintiff Roberts on behalf of the Washington Subclass)**

97.    Plaintiffs incorporate and reallege the foregoing allegations of fact.

98.    Plaintiff Roberts, Washington Subclass members, and Honda are "persons" under Wash. Rev. Code § 19.86.010(1).

99.    Honda's acts and practices, as set forth above, occurred in the conduct of "trade" or "commerce" within the meaning of Wash. Rev. Code § 19.86.010(2).

100.   The WCPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or practices." Wash. Rev. Code § 19.86.020.

101.   Honda's acts and practices, described herein, are unfair and deceptive in violation of Washington law. By selling defective Class Vehicles with exclusive or superior knowledge of the Defect, and by failing to disclose the Sunroof Defect or honor warranty claims in good faith, Honda acted unscrupulously in a manner that is substantially oppressive and injurious to consumers.

CLASS ACTION COMPLAINT
CASE NO.

102.   Honda also engaged in unfair and deceptive trade practices in violation of Washington law by promoting the quality and functionality of the Class Vehicles, while failing to disclose and actively concealing the Sunroof Defect.

103.   Honda committed the deceptive acts and practices with the intent that consumers, such as Plaintiff Roberts and Washington Subclass members, would rely on its representations and omissions when deciding whether to purchase or lease a Class Vehicle.

104.   Plaintiff Roberts and Washington Subclass members suffered ascertainable loss as a direct and proximate result of Honda's unfair and deceptive acts and practices. Had Plaintiff Roberts and Washington Subclass members known that the Class Vehicles are defective, they would not have purchased or leased a Class Vehicle or would have paid significantly less for one. Among other injuries, Plaintiff Roberts and Washington Subclass members overpaid for their Class Vehicles, and their Class Vehicles suffered a diminution in value.

105.   Honda's violations of the WCPA and refusal to acknowledge that the Class Vehicles are defective and constitute a safety risk present a continuing risk to Plaintiff Roberts and Washington Subclass members, as well as to the general public. Honda's unlawful acts and practices adversely affect the public interest.

106.   Under Wash. Rev. Code § 19.86.090, Plaintiff Roberts and the Washington Subclass seek an order enjoining Honda's unfair and deceptive acts and practices, providing for appropriate monetary relief, including trebled damages, and awarding reasonable attorneys' fees and costs.

107.   In accordance with Wash. Rev. Code § 19.86.095, a copy of this Complaint has been served on the Attorney General of Washington

CLASS ACTION COMPLAINT
CASE NO.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## THIRD CAUSE OF ACTION
### Violation of the Florida Deceptive and Unfair Trade Practices Act
### Fla. Stat. § 501.201 *et seq.* ("FDUTPA")
### (Plaintiff Fulcomer on behalf of the Florida Subclass)

108.    Plaintiffs incorporate and reallege the foregoing allegations of fact.

109.    Plaintiff Fulcomer and Florida Subclass members are "consumers" within the meaning of Fla. Stat. § 501.203(7).

110.    Honda engages in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

111.    The FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

112.    Honda's acts and practices, described herein, are unfair and deceptive in violation of the FDUTPA. Honda failed to disclose material facts to Plaintiffs and Florida Subclass members concerning the Sunroof Defect, made misleading partial representations regarding the quality of Class Vehicles without disclosing the entire truth, furnished replacement parts that it knew would not adequately remedy the Sunroof Defect, failed to exercise adequate quality control and due diligence over the Class Vehicles before placing them on the market, and refused to acknowledge the scope and severity of the Defect, which poses safety concerns.

113.    Honda committed such unfair and deceptive acts and practices with the intent that consumers, such as Plaintiff Fulcomer and Florida Subclass members, would rely on Honda's misrepresentations and omissions when deciding whether to purchase a Class Vehicle.

114.    Plaintiff Fulcomer and Florida Subclass members suffered ascertainable loss as a direct and proximate result of Honda's unfair and deceptive acts and practices. Had Plaintiff Fulcomer and Florida Subclass members known that the Class Vehicles are defective, they would not have purchased or leased a Class Vehicle or would have paid significantly less for one. Among other injuries, Plaintiff Fulcomer and Florida Subclass

29

members overpaid for their Class Vehicles, and their Class Vehicles suffered a diminution in value.

115.   Plaintiff Fulcomer and Florida Subclass members are entitled to recover their actual damages, under Fla. Stat. § 501.211(2) and reasonable attorneys' fees under Fla. Stat. § 501.2105(1).

116.   Plaintiff Fulcomer also seeks an order enjoining Honda's unfair and deceptive acts and practices pursuant to Fla. Stat. § 501.211, and any other just and proper relief available under the FDUTPA.

## FOURTH CAUSE OF ACTION
### Breach of the Implied Warranty of Merchantability
### (By Plaintiffs on behalf of the Nationwide Class or, alternatively, the State Subclasses)

117.   Plaintiffs incorporate and reallege the foregoing allegations of fact.

118.   Honda is a "merchant" as defined under the Uniform Commercial Code ("UCC").

119.   The Class Vehicles are "goods" as defined under the UCC.

120.   A warranty that the Class Vehicles were in merchantable quality and condition arises by operation of law with respect to transactions for the purchase and lease of Class Vehicles. Honda impliedly warranted that the Class Vehicles were of good and merchantable condition and quality, fit for their ordinary intended use, including with respect to safety, reliability, operability, and the absence of material defects, and that the vehicles would pass without objection in the automotive trade.

121.   The Class Vehicles, when sold and leased, and at all times thereafter, were not in merchantable condition or fit for the ordinary purpose for which vehicles are used. The Class Vehicles were not merchantable in that the Defect renders the vehicle sunroofs prone to shattering during ordinary use, creating a significant risk of an accident, and rendering the vehicle unsuitable for use as a means of transportation.

122.   The Sunroof Defect was present in the Class Vehicles when they were placed into the stream of commerce and inevitably manifests well before the end of the

30
CLASS ACTION COMPLAINT
CASE NO.

useful life of the vehicle. Because of its latent nature, the Sunroof Defect was not reasonably discoverable by Plaintiffs or Class members.

123.   Honda was provided notice of the problem described herein within a reasonable time by numerous complaints online, directly to Honda and its authorized dealers, by class members taking their vehicle with a shattered sunroof to Honda dealers, by Plaintiffs' demand letters, and by this class action lawsuit.

124.   Plaintiffs and the other Class members have had sufficient direct dealings with either Honda or its agents, including its authorized dealerships, to establish privity of contract between Honda on the one hand and Plaintiffs and each Class member on the other hand. Honda directly communicated with Plaintiffs and Class members through its agents, including its authorized dealerships, during the sales process. In addition, Honda directly communicated with Plaintiffs and Class members via its television, print, and online advertisements. Honda also provided warranties directly to Plaintiffs and Class members. Plaintiffs and other Class members relied on Honda's direct representations regarding the high quality, durability, reliability, dependability, and functionality of the Class Vehicle when making their purchasing decision.

125.   Regardless, privity is not required here because Plaintiffs and each of the Class members are the intended third-party beneficiaries of contracts between Honda and its dealers, and specifically of Honda's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles. The warranty agreements, such as the New Vehicle Limited Warranty, were designed for and intended to benefit consumer end-users only. Furthermore, Honda was aware that the Class Vehicles were ultimately intended for use by consumers like Plaintiffs and not dealers. Honda also understood Plaintiffs' and consumers' requirements—including that Class Vehicles would provide reliable transportation, function in a manner that does not pose a safety hazard, and be free from known defects—and expectation that a vehicle manufacturer would disclose any such defect prior to sale. Honda delivered the Class Vehicles to Plaintiffs and other Class

CLASS ACTION COMPLAINT
CASE NO.

members understanding the need to meet these requirements.

126.    In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by Honda to disclaim implied warranties in a manner that would exclude or limit coverage for the Sunroof Defect would be unconscionable. Honda's agreements and warranties were adhesive and did not permit negotiations. It possessed superior and exclusive knowledge of the Defect—which is a latent defect—prior to offering Class Vehicles for sale. Honda also concealed and did not disclose this Defect, and it did not remedy the Defect prior to sale (or afterward).

127.    As a direct and proximate result of Defendant's breach of the warranties of merchantability, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial.

### FIFTH CAUSE OF ACTION
**Breach of Express Warranty**
**(By Plaintiffs Tappana and Fulcomer on behalf of the Nationwide Class or, alternatively, the Missouri and Florida State Subclasses)**

128.    Plaintiffs incorporate and reallege the foregoing allegations of fact.

129.    Plaintiffs Tappana and Fulcomer bring this claim on behalf of the Nationwide Class, or alternatively, the Missouria and Florida State Subclasses.

130.    Honda is a "merchant" as defined under the Uniform Commercial Code (UCC).

131.    The Class Vehicles are "goods" as defined under the UCC.

132.    Honda provides a New Vehicle Limited Warranty with every Class Vehicle expressly warranting that it will repair any defects in materials and/or workmanship free of charge during the applicable warranty period: three years or 36,000 miles for every new Honda and four years or 50,000 miles for every new Acura—whichever comes first. The Sunroof Defect is a defect in materials and/or workmanship and therefore should have been repaired for free under the Limited Warranty.

CLASS ACTION COMPLAINT
CASE NO.

133.   The Sunroof Defect manifested in Plaintiffs' and Class members' vehicles during normal operation, such as during household trips and travel to work.

134.   Honda breached its written express warranties by failing to provide an adequate repair when Plaintiffs and Class members presented their Class Vehicles to authorized Honda dealers following manifestation of the Sunroof Defect. Despite its knowledge that Plaintiffs' and Class members' vehicles were exhibiting the symptoms of the Defect, Honda declined to provide repairs under warranty. Even when Honda did agree to provide warranty service, it merely replaced the shattered sunroof with another equally defective sunroof, thereby failing to address the underlying defect in materials and/or workmanship in the Class Vehicles.

135.   Honda's failure to fulfill its written warranty obligations constitutes a uniform pattern and practice that extended to all of its authorized dealerships.

136.   These warranties formed the basis of the bargain that was reached when Plaintiffs and Class members purchased or leased their Class Vehicles. Plaintiffs and Class members experienced the Defect within the warranty period. Despite the existence of the express warranty and an opportunity to make repairs, Honda failed to inform Plaintiffs and Class members of the Defect and failed to adequately repair the Defect.

137.   Plaintiffs and the other Class members have had sufficient direct dealings with either Honda or its agents, including its authorized dealerships, to establish privity of contract between Honda on the one hand and Plaintiffs and each Class member on the other hand. Honda directly communicated with Plaintiffs and Class members through its agents and dealerships. In addition, Honda directly communicated with Plaintiffs and Class members via its television, print, and online advertisements. Honda also issued its vehicle warranties directly to Plaintiffs and Class members, who relied on Honda's direct representations regarding the high quality, durability, reliability, dependability, and functionality of the Class Vehicle when making their purchasing decision.

138.   Regardless, privity is not required here because Plaintiffs and each of the Class members are the intended third-party beneficiaries of contracts between Honda and

CLASS ACTION COMPLAINT
CASE NO.

its dealers, and specifically of Honda's express warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles. The warranty agreements, such as the New Vehicle Limited Warranty, were designed for and intended to benefit consumer end-users only. Furthermore, Honda was aware that the Class Vehicles were ultimately intended for use by consumers like Plaintiffs and not dealers. It also understood Plaintiffs' and consumers' requirements, including that Class Vehicles would provide reliable transportation, that they will function in a manner that does not pose a safety hazard, that they would be free from known defects, and that a vehicle manufacturer would disclose any such defect prior to sale. Honda delivered the Class Vehicles to Plaintiffs and other Class members understanding the need to meet these requirements.

139.   As a result of Honda's breach of its express warranty, Plaintiffs and Class members have suffered economic damages including, but not limited to, the loss of the benefit of their bargain, loss of vehicle use, diminished value, substantial loss in value and resale value, and out-of-pocket expenses.

140.   Honda was provided notice of the problem described herein within a reasonable time by numerous complaints online, directly to Honda and its authorized dealers, by class members taking their vehicle with a shattered sunroof to Honda dealers, by Plaintiffs' demand letters, and by this class action lawsuit.

141.   Plaintiffs and Class members have complied with all obligations under the written warranties or otherwise have been excused from performance of such obligations as a result of Honda's conduct described herein.

142.   In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by Honda to limit its express warranty in a manner that would exclude or limit coverage for the Defect, including benefit-of-the-bargain, incidental, or consequential damages, would cause the warranty to fail of its essential purpose. Plaintiffs and Class members have presented their Class Vehicles to Honda's authorized dealers on numerous occasions and Honda has failed to remedy the Sunroof Defect. As a

CLASS ACTION COMPLAINT
CASE NO.

result, Plaintiffs and Class members are left with defective vehicles that present a serious safety risk and have been deprived of the benefit of their bargains.

143.   In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by Honda to limit its express warranty in a manner that would exclude or limit coverage for the Sunroof Defect would be unconscionable. Honda's warranties were adhesive and did not permit negotiations. Moreover, Honda possessed superior knowledge of the Sunroof Defect—which is a latent defect—prior to offering Class Vehicles for sale. Honda concealed and did not disclose this Defect, and did not remedy it prior to sale (or afterward).

144.   As a direct and proximate result of Defendant's breach of express warranty, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION
### Fraudulent Concealment
### (By Plaintiffs on behalf of the Nationwide Class, or alternatively, the State Subclasses)

145.   Plaintiffs incorporate and reallege the foregoing allegations of fact.

146.   Honda made material omissions concerning a presently existing or past fact. Honda did not fully and truthfully disclose to its customers the true nature of the latent Sunroof Defect, which was not readily discoverable until after the Vehicles were purchased and the Defect manifested. A reasonable consumer would not have expected a latent Defect in a new vehicle and especially not one that creates a risk of an accident or renders the vehicle unsuitable for transportation after the Defect manifests.

147.   Honda made these omissions with knowledge of their falsity and with the intent that Plaintiffs and Class members rely upon them.

148.   The facts concealed, suppressed, and not disclosed by Honda to Plaintiffs and Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease Class Vehicles at all or at

35
**CLASS ACTION COMPLAINT**
**CASE NO.**

the offered price.

149.    The facts concealed, suppressed, and not disclosed by Honda to Plaintiffs and Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease Class Vehicles, whether at all or at the offered price. Moreover, the existence of the sunroof Defect and the extent of the failures was not known or reasonably discoverable by Plaintiffs or Class members.

150.    Honda had a duty to disclose the true quality and reliability of the Class Vehicles because the knowledge of the Defect and its details were known and/or accessible only to Honda; it had superior knowledge and access to the relevant facts; and Honda knew the facts were neither known to nor reasonably discoverable by Plaintiffs and Class members. Honda also had a duty to disclose because it made numerous affirmative representations about the quality and reliability of its vehicles, including references as to the quality and functionality of the Class Vehicles, as set forth above, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual reliability of these vehicles.

151.    Had Plaintiffs and the Class known about the defective nature of the Class Vehicles, they would not have purchased or leased the Class Vehicles or would have paid less in doing so. Thus, Plaintiffs and the other Class members were fraudulently induced to purchase or lease Class Vehicles containing the Defect.

152.    Plaintiffs and Class members reasonably relied on Honda's material omissions and suffered damages as a result. Honda's fraudulent conduct was willful, wanton, oppressive, reprehensible, and malicious. Consequently, Plaintiffs and Class members are entitled to an award of punitive damages.

## SEVENTH CAUSE OF ACTION
### Unjust Enrichment
### (By Plaintiffs on behalf of the Nationwide Class, or alternatively, the State Subclasses)

153.    Plaintiffs incorporate and reallege the foregoing allegations of fact.

CLASS ACTION COMPLAINT
CASE NO.

154.    This count is pled in the alternative to Plaintiffs' consumer warranty claims.

155.    Plaintiffs and Class members lack an adequate remedy at law.

156.    As the intended and expected result of its conscious wrongdoing, Honda has profited and benefitted from Plaintiffs' and Class members' purchases and leases of Class Vehicles containing a dangerous Sunroof Defect.

157.    Honda has voluntarily accepted and retained these profits and benefits, knowing that, as a result of its misconduct alleged herein, Plaintiffs and the Class were not receiving Class Vehicles of the quality, nature, fitness, reliability, safety, or value that Honda represented and which an ordinary consumer expects. Plaintiffs and the Class members reasonably expected that when they purchased or leased a Class Vehicle, it would not contain a latent Defect that poses a safety risk.

158.    Honda has been unjustly enriched by its deceptive, wrongful, and unscrupulous conduct and by its withholding of benefits and unearned monies from Plaintiffs and the Class rightfully belonging to them.

159.    Equity and good conscience militate against permitting Honda to retain these profits and benefits from its wrongful conduct. They should accordingly be disgorged or placed in a constructive trust so that Plaintiffs and Class members can obtain restitution.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Class, respectfully request that this Court:

A.    Determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class and Subclasses as defined above and appoint Plaintiffs as representatives of the Class and Subclasses and their counsel as Class Counsel;

B.    Award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiffs and Class members are entitled;

C.    Award pre-judgment and post-judgment interest on such monetary relief;

CLASS ACTION COMPLAINT
CASE NO.

1          D.     Grant appropriate injunctive and/or declaratory relief, including,

2   without limitation, an order requiring Honda to address, recall, and/or replace the Class

3   Vehicles and to extend the applicable warranties to a reasonable period of time, an order

4   enjoining Honda from continuing the unlawful, deceptive, fraudulent, and unfair business

5   practices alleged in this Complaint, or, at a minimum, to provide Plaintiffs and Class

6   members with appropriate curative notice regarding the existence and cause of the

7   Sunroof Defect;

8          E.     Award reasonable attorney's fees and costs as provided by law; and

9          F.     Grant such further and other relief that this Court deems appropriate.

10  **<u>DEMAND FOR JURY TRIAL</u>**

11      Plaintiffs hereby demand a trial by jury for all claims so triable.

12

13  Dated: November 18, 2021          Respectfully submitted,

14                           **GIRARD SHARP LLP**

15

16                           */s/ Adam Polk*

17                           Adam E. Polk (State Bar No. 273000)

18                           apolk@girardsharp.com

19                           Jordan Elias (State Bar No. 228731)

20                           jelias@girardsharp.com

21                           Simon S. Grille (State Bar No. 294914)

22                           sgrille@girardsharp.com

23                           601 California Street, Suite 1400

                           San Francisco, CA 94108

                           Telephone: (415) 981-4800

                           Facsimile: (415) 981-4846

24

25                           Matthew Schelkopf (*pro hac vice*

26                            application forthcoming)

                         Joseph B. Kenney (*pro hac vice*

27                            application forthcoming)

28                           **SAUDER SCHELKOPF LLC**

                         1109 Lancaster Avenue

                         Berwyn, PA 19312

Tel.: (888) 711-9975
mds@sstriallawyers.com
jbk@sstriallawyers.com

Benjamin F. Johns (*pro hac vice*
 application forthcoming)
**CHIMICLES SCHWARTZ KRINER**
 **& DONALDSON-SMITH LLP**
361 W. Lancaster Avenue
Haverford, PA 19041
Tel: (610) 642-8500
bfj@chimicles.com

Steven G. Calamusa
**GORDON & PARTNERS, PA**
4114 Northlake Lake Blvd.
Palm Beach Gardens, FL 33410
Telephone: (561) 799-5070
Facsimile: (561) 366-1485
scalamusa@fortheinjured.com

*Attorneys for Plaintiffs*

CLASS ACTION COMPLAINT
CASE NO.